UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERRY JAMES, )
 )
    Petitioner, )
 )
vs. ) Case No. 4:11CV1496 JCH
 )
MICHAEL BOWERSOX, )
 )
    Respondent. )

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Jerry James's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition.

On June 13, 2007, a jury in the Circuit Court of St. Louis City, Missouri, found Petitioner guilty of two counts of assault in the first degree, two counts of armed criminal action, and one count of burglary in the first degree. (Resp. Exh. B, PP. 47-51). Petitioner was sentenced as a prior and persistent offender to consecutive terms of ten years imprisonment on the assault convictions and five years imprisonment on the armed criminal action convictions, and an additional concurrent term of ten years imprisonment on the burglary conviction, for a total of thirty years. (Id., PP. 63-67). The Missouri Court of Appeals affirmed Petitioner's convictions and sentence on direct appeal. *State v. James*, 260 S.W.3d 434 (Mo. App. 2008). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied following an evidentiary hearing. (Resp. Exh. G, PP. 55-60). The Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction motion. *James v. State*, 323 S.W.3d 466 (Mo. App. 2010).

Petitioner is currently incarcerated at the South Central Correctional Center in Licking, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises the following three claims for relief:

(1) That the trial court erred in denying Petitioner's motion for judgment of acquittal at the close of all evidence, as the State's evidence was insufficient to prove that Petitioner committed the crime of burglary in the first degree;

(2) That Petitioner received ineffective assistance of counsel, in that trial counsel failed to locate, interview, endorse and call Ms. Niya Perkins as an alibi witness; and

(3) That Petitioner received ineffective assistance of counsel, in that appellate counsel failed to pursue on appeal Petitioner's claim that the trial court erred in refusing to strike venireperson Jean Greenwald for cause.

(§ 2254 Petition, PP. 6-34).

## DISCUSSION

**I.** **Ground 1**

As stated above, in Ground 1 of his petition Petitioner asserts the trial court erred in denying Petitioner's motion for judgment of acquittal at the close of all evidence, as the State's evidence was insufficient to prove that Petitioner committed the crime of burglary in the first degree. (§2254 Petition, PP. 6-11). Petitioner raised this claim on direct appeal of his convictions, and the Missouri Court of Appeals denied the claim as follows:

> In his sole point, Defendant[1] contends the trial court erred in overruling his motions for judgment of acquittal for burglary in the first degree. Defendant argues the evidence was insufficient to establish that Defendant knowingly entered the building unlawfully. We disagree.
>
> Appellate review of the trial court's denial of a defendant's motion for judgment of acquittal at the close of all evidence is limited to determination of whether there is sufficient evidence from which reasonable juror[s] might have found defendant guilty beyond a reasonable doubt. State v. Brooks, 158 S.W.3d 841, 847

---

[1] On direct appeal, Petitioner is referred to as "Defendant" by the Missouri Court of Appeals.

(Mo. App. E.D. 2005). On review, we accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence and disregard all evidence and inferences to the contrary. Id. When reviewing for sufficiency of the evidence, circumstantial evidence is afforded the same weight as direct evidence. Id.

Section 569.160 provides, in pertinent part:

[a] person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
    (1) Is armed with explosives or a deadly weapon or;
    (2) Causes or threatens immediate physical injury to any person who is not a participant in the crime; or
    (3) There is present in the structure another person who is not a participant in the crime.

The verdict director for the burglary count in this case required the jury to find, beyond a reasonable doubt, that Defendant "knowingly entered unlawfully in an inhabitable structure located at 5076 Page Blvd and possessed by Monte Connelly." The terms "enter unlawfully" and "remain unlawfully" are defined in Section 569.010(8), which provides that "a person 'enters unlawfully or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." State v. Thomas, 70 S.W.3d 496, 508 (Mo. App. E.D. 2002).

Here, the jury could reasonably infer from the evidence presented at trial that Defendant knowingly unlawfully entered the building and Connelly and Jordan's room. Defendant did not live at that address. The door to the main entrance of the building was knocked off its hinges. Defendant heard a "boom" as the door was kicked in immediately prior to Defendant and Lee James entering the building. There was no evidence that Defendant had been invited onto the premises or Connelly's or Jordan's room. This evidence is sufficient to support a finding that Defendant entered unlawfully.

Defendant contends there was no evidence regarding whether Defendant's entry into the building was made by force or by permission of another occupant of the boarding house. Here, the evidence that the door had been kicked allowed for the reasonable inference that Defendant did not have permission to enter the building, but entered unlawfully.

Defendant further argues there was no evidence that Defendant broke the door in and thus, there was insufficient evidence to show that he entered unlawfully. Defendant maintains the circumstantial evidence showed Lee James was the one who would have sought entry into the building by using force to get into the building, and

Defendant was merely an accomplice. However, there is no requirement that a person must break down a door to gain unlawful entry, only that he is not licensed or privileged to enter the inhabitable structure. It does not matter whether Lee James kicked in the door or whether Defendant kicked in the door. The fact that Defendant entered into the building after the door was kicked in showed he did so without license or privilege and thus, entered unlawfully.

Finally, Defendant asserts the State failed to prove he entered the building unlawfully because the building was a boarding house and there was no proof that Defendant needed a special license or privilege to be in the common areas of the building, such as the stairwell or the hallway, where there was no evidence that a key was required to gain entry, or that any license Defendant would have had to be in the common areas of the building had been revoked. Defendant points to the evidence that both Connelly and Jordan testified they saw Defendant and Lee James in the hallway of the building before he shot them. However, even though the building was a boarding house, there was no evidence that the hallway and stairwell was open to the public. The fact that the front door of the building was kicked in provides a reasonable inference that there were no common areas open to the public. Defendant did not have a valid license to be in the hallway. Moreover, the evidence further showed Defendant entered Connelly's and Jordan's room without permission or license.

The evidence presented at trial was sufficient to show Defendant knowingly entered unlawfully the building and Connelly's and Jordan's room. The trial court did not err in overruling Defendant's motion for judgment of acquittal. Defendant's point is denied.

(Resp. Exh. E, PP. 3-6 (footnotes omitted)).

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has held that in reviewing whether the evidence presented in state court was sufficient to support a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis in original) (citation omitted). Here, there was evidence of damage to the door at the bottom of the stairwell in the boarding house, and testimony from one of the victims regarding hearing a door being kicked in immediately prior to Petitioner's appearance. (Resp. Exh. A, PP. 236, 297-98). Furthermore, the evidence presented indicated that regardless of whether Petitioner himself entered the victim's unit, at the very least he reached into the room with his gun. (Id., PP. 330-31). Taken together, this evidence was sufficient to permit a reasonable jury to find that Petitioner knowingly entered the building unlawfully, and thus was sufficient to justify a verdict of guilt beyond a reasonable doubt on the burglary count. The decision of the Missouri court thus is entitled to deference, and Ground 1 is denied.

**II.    Ground 2**

As stated above, in Ground 2 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed to locate, interview, endorse and call Ms. Niya Perkins as an alibi witness. (§2254 Petition, PP. 12-24). Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 2.    ....Post-conviction claims of ineffective assistance of counsel are governed by Strickland v. Washington, 104 Sup. Ct. 2052 (1984); see also, Sanders v. State, 738 S.W.2d 856 (Mo. banc 1987); and State v. Dulany, 781 S.W.2d 52, 57 (Mo. banc 1989).
>
> 3.    Movant[2] carries the burden of proving by a preponderance of the evidence that (1) counsel failed to exercise the customary skill and diligence that a reasonably

---

[2] Petitioner is referred to as "Movant" by the post-conviction motion courts.

competent attorney would display under certain circumstances, and (2) Movant was thereby prejudiced. Strickland, page 2064. This has been called a "heavy burden" because there is a presumption that the trial counsel is competent and deference should be paid to trial counsel's decisions. Sanders, page 857-858. In adjudging the reasonableness of an attorney's performance or exercise of judgment, reliance on the clarity of hindsight should be eschewed even though it reveals mistakes. Rather, the circumstances surrounding counsel's choices should be viewed as they appeared to counsel at the time the decisions were made. Sanders, at page 858. Necessarily, "[a] Movant must satisfy both the performance prong and the prejudice prong in order to prevail on ineffective assistance of counsel claim[s]." State v. Boyce, 913 S.W.2d 425, 429 (Mo. App. E.D. 1996).

4. Movant alleges that he was denied effective assistance of counsel and due process of law because trial counsel failed to locate, interview, endorse, and call as a witness, Ms. Niya Perkins. In order to be entitled to relief on the ground that counsel failed to call witnesses Movant must identify who the witnesses were, whether or not counsel was informed of their existence, establish that the witnesses could have been located through reasonable investigation, would have testified if called, and their testimony would have provided a viable defense. State v. Dudley, 819 S.W.2d 51, 56 (Mo. App. S.D. 1991); Thompson v. State, 779 S.W.2d 666 (Mo. App. E.D. 1989); Smith v. State, 774 S.W.2d 562, 564 (Mo. App. E.D. 1989); and State v. Martin, 775 S.W.2d 196 (Mo. App. E.D. 1989). If a potential witness's testimony would not have unqualifiedly supported the Movant, the failure to call such witness is not ineffective assistance of counsel. Hamilton v. State, 770 S.W.2d 346 (Mo. App. E.D. 1989).

5. Trial counsel Kelly Moyich testified that she did interview a potential alibi witness provided by Movant, Ms. Marilyn Good. Ms. Good showed up the day of trial, and after said interview, Ms. Moyich did not find her account or proposed testimony to be credible. In fact, Ms. Moyich testified that after interviewing Ms. Good, whom the Movant claimed to be his alibi, she decided not to use her as a witness because Ms. Good indicated, to her, that Movant asked that she lie for him in trial. Based on Ms. Moyich's interview with Ms. Good, it was a sound and reasonable trial strategy not to call an alibi witness. Further, Ms. Moyich had never been given the name of Ms. Perkins prior to the trial or even at the trial. Ms. Perkins' testimony clearly would not provide Movant with a viable defense as its alibi was not iron-clad, not to mention the troubling aspect of perjury presented by a prior witness. "The choice of witnesses is ordinarily a matter of trial strategy and will not support an ineffective assistance of counsel claim." State v. Harris, 870 S.W.2d 798 (Mo. banc 1994). Given all the facts and circumstances surrounding Ms. Perkins' testimony, as it did not firmly establish an alibi for Movant, clearly trial counsel was not ineffective in her representation in this regard. An attorney is under an absolute obligation not to present perjured testimony in support of his client. McNamara v. State, 502 S.W.2d 306, 308 (Mo. 1972) and Askew v. State, 617 S.W.2d 642, 644. See also Bennett v. State, 549 S.W.2d 585, 587 and Allen v. State, 518 S.W.2d 170,

172. Kelly Moyich is an experienced trial attorney and this court finds her to be highly credible.

(Resp. Exh. G, PP. 57-59). Petitioner advanced the claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied his claim as follows:

> In his first point on appeal, Movant claims the motion court clearly erred in denying his PCR motion because Trial Counsel was ineffective in that Trial Counsel failed to locate, interview, endorse, and call his sister, Niya Perkins (Perkins), as an alibi witness.
>
> The State counter argues that no error occurred because Movant did not disclose Perkins as an alibi witness to Trial Counsel and that Perkins' testimony would not have provided a viable defense. We agree.
>
> To prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) his attorney's performance did not conform to the degree of skill, care, and diligence rendered by a reasonably competent attorney under similar circumstances; and (2) as a result of his attorney's performance, he was prejudiced. Rule 29.15(i) (standard of review); Strickland v. Washington, 466 U.S. 668, 687 (1984); Worthington v. State, 166 S.W.3d 566, 572-73 (Mo. banc 2005). If the defendant fails to prove either prong of the Strickland test, the court need not consider the remaining prong, and the defendant's claim must fail. Scott, 183 S.W.3d at 247; Londagin, 141 S.W.3d at 118.
>
> To satisfy the first prong of the Strickland test, a movant must overcome a strong presumption that trial counsel provided competent representation by showing "that counsel's representation fell below an objective standard of reasonableness." Worthington, 166 S.W.3d at 573. "This standard is met by identifying specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Id. "It is presumed that counsel's conduct was reasonable and effective." Id.
>
> Reasonable choices of trial strategy cannot serve as a basis for a claim of ineffective assistance of counsel Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006). "[S]trategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable." Id., 196 S.W.3d at 33 (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052).
>
> To satisfy the second prong of the Strickland test, a movant is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (quoting Middleton v. State, 103 S.W.3d 726, 733 (Mo. banc 2003)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 33-34 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).

To prevail on an ineffective assistance of counsel claim due to counsel's failure to investigate witnesses, the movant must prove 1) the witnesses could have been located through reasonable investigation; 2) the witness would have testified if called; and 3) the witnesses' testimony would have aided the movant's defense. White v. State, 939 S.W.2d 887, 896 (Mo. banc 1997); State v. Steward, 936 S.W.2d 592, 595 (Mo. App. 1996). If the witness' testimony would have negated an element of the crime for which the movant was convicted, the testimony would have provided the movant with a viable defense. McClendon v. State, 247 S.W.3d 549, 556 (Mo. App. E.D. 2007). If the witness' testimony would have merely impeached the State's witnesses, relief on a claim of ineffective assistance of counsel is not warranted. Id., 247 S.W.3d at 556-57. The selection of witnesses and the introduction of evidence are questions of trial strategy, the mere choice of which is not a foundation for finding counsel's assistance was ineffective. Ringo v. State, 120 S.W.3d 743, 748 (Mo. banc 2003). Ordinarily, strategic decisions made by counsel after thoroughly investigating the law and the facts relevant to the plausible options are virtually unchallengeable. Helmig v. State, 42 S.W.3d 658, 667 (Mo. App. E.D. 2001).

At the evidentiary hearing in this case, Movant, Perkins, and Trial Counsel testified.

Movant testified that the night before the underlying offenses occurred, he had stayed at Perkins' home. Movant testified that he had told Trial Counsel about Perkins when Trial Counsel "came to see [him]" and "when trial started." Movant testified that Trial Counsel responded to this information by telling him that she was the lawyer, he was the client, he was not paying her, and she was going to do what she was going to do. Later, Movant testified that Perkins came to visit Movant in jail and called Movant but that Perkins never called Trial Counsel, the police, or the prosecutor's office claiming that she was an alibi witness for Movant. Movant further testified that he did not ask anyone else to be an alibi witness and did not inform Trial Counsel of anyone else who could be a potential alibi witness.

Perkins testified that Movant had come to stay with her after he had been released from prison on other convictions. Perkins testified that Movant stayed with her the night before the offenses but that she did not know the date Movant had stayed at her home. Perkins also testified that she had visited Movant in jail after he was arrested for the offenses in the underlying case. Perkins testified that Trial Counsel's office did not contact her but that she attended Movant's trial even though she was not subpoenaed as a witness. On cross-examination, Perkins testified that she sometimes was away from the house for several nights in a row or asleep, and she did not necessarily know Movant's whereabouts when he left the house. Perkins testified that she had taken Movant to Marilyn Good's (Good) house on the day of the underlying offenses but that she had never volunteered that information to Trial Counsel before or during trial. Perkins further testified that she did not know the day, month, or year when Movant was found guilty of the underlying offenses or when he was sentenced but that she remembered driving Movant to Good's house on the day the underlying offenses occurred.

Trial counsel testified that she had, in fact, interviewed a potential alibi witness provided by Movant, who was not Perkins but Good. Good came to court on the first day of trial, and Trial Counsel endorsed Good as a witness, filed the alibi notice with the trial court, and intended to call Good. Later, when Trial Counsel interviewed Good, Good informed Trial Counsel that Movant and Movant's brother had asked Good to lie about Movant's involvement in the underlying crime. Good also informed Trial Counsel that she did not want to testify, and, if she did testify, she would be lying. Based on that information, Trial Counsel decided against calling Good as an alibi witness and conducted no further investigation into a possible alibi defense. Trial Counsel testified that she had not received any information about other potential alibi witnesses, had nothing in her case notes regarding Perkins, did not recall interviewing Perkins or endorsing Perkins as a witness, and was uncertain whether Perkins even attended Movant's trial. Trial counsel further testified that the first time she heard of Perkins as a potential alibi witness for Movant was when Trial Counsel read Movant's PCR Motion.

In its findings of fact and conclusions of law, the motion court found that Trial Counsel was not ineffective. The motion court found the evidence presented at the evidentiary hearing established that Trial Counsel did not know about Perkins prior to trial or at trial. The evidence also established that Perkins' testimony would not have provided Movant with a viable alibi defense because Perkins admitted that she did not always know Movant's whereabouts when he had stayed at her home around the time of the offenses in the underlying case. Furthermore, the motion court found that Trial Counsel was an experienced trial attorney and was "highly credible." Notably, Good did not testify at the evidentiary hearing. We have reviewed the transcript from the evidentiary hearing and find nothing that contradicts the motion court's finding. Given our standard of review, we defer to the motion court's determinations regarding the credibility of the witnesses. Point denied.

(Resp. Exh. J, PP. 3-7).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration, the Court finds that with this claim Petitioner fails to satisfy either prong of the *Strickland* test. With respect to deficient performance, the Court notes that during the evidentiary hearing on Petitioner's post-conviction motion, Ms. Moyich testified that she had no recollection of Ms. Perkins being mentioned as a potential alibi witness, nor did her notes indicate Ms. Perkins ever contacted her in any way as she prepared for trial. (Resp. Exh. F, PP. 55-58). Instead, Ms. Moyich stated that the first time she saw the name Niya Perkins was the morning of the evidentiary hearing, when she read Petitioner's 29.15 motion. (Id., P. 58). The 29.15 motion court found Ms. Moyich's testimony to be credible, and that finding was not unreasonable in light of the evidence presented in state court. Under these circumstances, this Court does not find that trial counsel's failure to locate and endorse a witness of whom she was unaware fell outside the wide range of professionally competent assistance sanctioned by *Strickland*.

With respect to prejudice, the Court finds that under the instant facts, it cannot be said that Petitioner was prejudiced by counsel's failure to call Niya Perkins. Rather, as found by the post-conviction motion court and the Missouri Court of Appeals, because Ms. Perkins' testimony was not clear in establishing she was aware of Petitioner's whereabouts during the time frame of the offenses, it is unlikely that her testimony would have yielded a different outcome. (See Resp. Exh. F, PP. 21-39). Under these circumstances, the Missouri state courts' finding that the result of Petitioner's proceeding would likely have been the same even absent counsel's alleged error was not an

unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Ground 2 of Petitioner's § 2254 petition must therefore be denied.

### III. Ground 3

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of counsel, in that appellate counsel failed to pursue on appeal Petitioner's claim that the trial court erred in refusing to strike venireperson Jean Greenwald for cause. (§2254 Petition, PP. 24-34). Petitioner raised this claim before the 29.15 post-conviction motion court, and the court denied the claim as follows:

> 6. Movant further claims that he was denied effective assistance of counsel and due process of law because appellate counsel failed to raise the issue of striking venire person Jean Greenwald for cause. In order to prove that Movant was deprived of effective assistance of counsel on appeal, Movant must show: (1) actions of appellate counsel were outside the wide range of professionally competent assistance, (2) errors of counsel were so severe that counsel was not functioning as counsel guaranteed Movant by the Sixth Amendment, and (3) deficiencies of counsel's performance resulted in prejudice. Strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted, in which was so obvious from the record that a competent lawyer would have recognized it and asserted it. Franklin v. State, 24 S.W.3d 686 (Mo. banc 2000). Considering the totality of the circumstances of juror Greenwald, the record clearly supports that there was no basis to disqualify her for cause. State v. McKee, 826 S.W.2d 26 (Mo. App. 1992). The record includes extensive questioning by counsel and the court concerning police credibility. It should be noted that police credibility was not a major issue in this case. Appellate counsel Kristine Starke, is also an experienced appellate attorney and the court finds her testimony to be highly credible. This court further finds juror Greenwald to be an honest person and her answers taken as a whole clearly show her ability to be a fair and impartial juror in this case. This court accordingly finds that Movant has failed to carry his burden of proof and establish prejudice in this regard.

(Resp. Exh. G, PP. 59-60). Petitioner advanced the claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied his claim as follows:

> In his second point on appeal, Movant claims the motion court clearly erred in denying his PCR motion because Appellate Counsel was ineffective in that

Appellate Counsel failed to raise on direct appeal the trial court's alleged error in not striking a venire person, Jean Greenwald (Greenwald), for cause due to Greenwald's answers to questions in *voir dire* regarding police officer credibility. Movant argues that he was prejudiced because, had Appellate Counsel raised the issue of the court's failure to strike Greenwald, there exists a reasonable probability that the outcome of the Movant's appeal would have been different.

The standard for an ineffective appellate counsel claim is effectively the same standard applied to an ineffective trial counsel claim. Mallett v. State, 769 S.W.2d 77, 83-84 (Mo. banc 1989). A movant must show both a deficiency in performance and a resulting prejudice. Id. Appellate counsel, however, is not required to raise every type of potential error on appeal. Id. To grant a motion related to ineffective assistance of appellate counsel, "'strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it.'" Moss v. State, 10 S.W.3d 508, 514 (Mo. banc 2000) (quoting Reuscher v. State, 887 S.W.2d 588, 591 (Mo. banc 1994)).

To prove he suffered ineffective assistance of his appellate counsel, a movant must show: 1) the actions of appellate counsel were outside the wide range of professional competent assistance; 2) appellate counsel's errors were so severe that he was not functioning as the "counsel" guaranteed to the movant under the Sixth Amendment; and 3) appellate counsel's deficient performance resulted in prejudice. Franklin v. State, 24 S.W.3d 686, 690-91 (Mo. banc 2000). Furthermore, the record must contain strong grounds showing appellate counsel failed to assert a claim of error that would have required reversal had it been asserted and was so obvious from the record that a competent and effective attorney would have recognized it and asserted it. Id. at 691; Holman v. State, 88 S.W.3d 105, 110 (Mo. App. E.D. 2002).

Here, Movant's claim is without merit.

At the evidentiary hearing in this case, Trial Counsel testified that she included the issue of the court's failure to strike Greenwald in Movant's motion for new trial. Trial Counsel testified that she raised the issue because, during *voir dire*, Greenwald initially had said she would be more likely to believe a police officer's testimony over other witnesses' testimony. Appellate Counsel testified that she read the motion for new trial and considered all of the issues included therein when she appealed Movant's case. However, after reviewing the transcript from *voir dire*, Appellate Counsel believed that Greenwald had been rehabilitated upon further questioning by the trial court when she testified that she could be fair. Appellate Counsel also knew that the appellate court's standard of review grants the trial court great deference in matters of jury selection; thus, Appellate Counsel believed the claim concerning Greenwald would not prevail on appeal and did not include that claim in the appeal. Instead, Appellate Counsel focused on challenging the sufficiency of the State's evidence regarding the burglary conviction.

In overruling Movant's PCR Motion, the motion court found that:

> Considering the totality of the circumstances of juror Greenwald, the record clearly supports that there was no basis to disqualify her for cause.... [Appellate counsel] is also an experienced appellate attorney and the court finds her testimony to be highly credible. This court further finds juror Greenwald to be an honest person and her answers taken as a whole clearly show her ability to be a fair and impartial juror in this case. This court accordingly finds that Movant has failed to carry his burden of proof and establish prejudice in this regard.

This Court has reviewed the transcript from the *voir dire* proceeding and agrees with the motion court's ruling. First, as the State notes in its responsive brief, the record is silent as to whether Greenwald actually served as a juror at Movant's trial. Second, even if Greenwald had served as a juror at Movant's trial, Greenwald's responses in *voir dire*, taken as a whole, indicated that she was willing and able to be impartial. See State v. Christeson, 50 S.W.3d 251, 264 (Mo. banc 2001) ("A venireperson's qualifications as a prospective juror are not determined by an answer to a single question, but by the entire examination.") After Trial Counsel motioned to strike Greenwald for cause, the trial court questioned Greenwald at length about whether she could impartially consider the witnesses' testimony. Greenwald testified that she understood all cases come down to believability of witnesses and that, whether or not the witness was a police officer, she would have to ask herself if any witness was telling the truth. Greenwald further testified that the "bottom line for [her] would be to say that just because [the witness] is a police officer doesn't mean [she's] hearing everything that's the truth[.]" The record shows that, before denying the motion to strike Greenwald for cause, the trial court independently explored Greenwald's testimony for possible prejudice toward Movant by considering Greenwald's testimony concerning her ability to act impartially. See Joy v. Morrision, 254 S.W.3d 885, 891 (Mo. banc 2008). The trial court was afforded broad discretion in determining whether to strike Greenwald for cause, and this Court would not have disturbed that ruling on direct appeal unless the record had reflected "a clear showing of abuse of discretion." Id. 254 S.W.3d at 888. Therefore, given that the record does not reflect a clear abuse of discretion or real probability of injury to Movant because of the trial court's denial of the motion to strike Greenwald, even if Appellate Counsel had challenged the ruling on direct appeal, this Court would not have disturbed the ruling. Consequently, Appellate Counsel will not now be found ineffective for failing to raise a meritless claim on appeal. See Franklin, 24 S.W.3d at 690-91; Holman, 88 S.W.3d at 110. Appellate Counsel did not have a duty to present every issue that had been asserted in Movant's motion for new trial. Holman, 88 S.W.3d at 110. The record shows that Appellate Counsel decided to pursue another issue that had been asserted in Movant's motion for new trial, which, as a matter of strategy, would promote judicial economy by focusing this Court's attention on issues more pertinent to resolving the case and with a better chance for success. Id. Point denied.

(Resp. Exh. J, PP. 7-10).

"It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal." *Cole v. Dormire*, 2011 WL 1258249, at *14 (E.D. Mo. Jan. 20, 2011) (citing *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985); *Douglas v. California,* 372 U.S. 353, 357–58 (1963)). The proper standard for evaluating a claim of ineffective assistance of appellate counsel is that set forth in *Strickland*. *Id.* In other words, Petitioner must show that his appellate attorney's performance fell below the reasonable standard of competence, and that there is a reasonable probability that the result would have been different absent this deficient performance. *See Strickland,* 466 U.S. at 687; *Gee v. Groose,* 110 F.3d 1346, 1352 (8th Cir. 1997).

"Appellate counsel is expected to winnow the issues on appeal to highlight the most meritorious issues and eliminate the sure losers." *Cole*, 2011 WL 1258249, at *14 (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Gee,* 110 F.3d at 1352; *Pollard v. Delo,* 28 F.3d 887, 889 (8th Cir. 1994)). "An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy, and does not constitute ineffective assistance of appellate counsel." *McCord v. Norman*, 2012 WL 1080925, at *16 (E.D. Mo. Mar. 30, 2012) (citations omitted). Thus, "[i]f an issue an appellate attorney failed to raise on appeal is not meritorious, then appellate counsel cannot be considered ineffective for having failed to argue that issue on appeal." *Cole*, 2011 WL 1258249, at *14 (citations omitted).

Upon consideration the Court finds that with this claim, Petitioner again fails to satisfy either prong of the *Strickland* test. With respect to deficient performance, the Court notes that during the evidentiary hearing on Petitioner's post-conviction motion, appellate counsel Kristina Starke testified that prior to filing Petitioner's direct appeal, she reviewed the motion for new trial filed by trial counsel. (Resp. Exh. F, P. 63). At that time she considered raising the claim regarding Ms.

Greenwald, but concluded that the trial judge had rehabilitated the juror. (Id., PP. 65, 73). Ms. Starke thus elected not to raise the issue on appeal, especially in light of the great deference the appellate court grants the trial court in matters of juror selection. (Id., PP. 65-66). The 29.15 motion court found Ms. Starke's testimony to be credible, and that finding was not unreasonable in light of the evidence presented in state court. Under these circumstances, this Court finds Petitioner's appellate attorney properly exercised her discretion in winnowing issues for appeal, by considering the juror bias issue and rejecting it based on Ms. Greenwald's answers during *voir dire*.

With respect to prejudice, the Court finds the flaw in Petitioner's claim is that the same state appellate court that reviewed this challenge in his postconviction proceeding would have reviewed the issue had it been raised on direct appeal, and held that, "even if Appellate Counsel had challenged the ruling on direct appeal, this Court would not have disturbed the ruling." (Resp. Exh. J, P. 10). Therefore, Petitioner's claim that the juror bias issue, had it been raised and briefed on direct appeal, would have resulted in reversible error, is refuted by the very court that would have decided the question on direct criminal appeal. *Cole*, 2011 WL 1258249, at *14. "Because an attorney cannot provide ineffective assistance in omitting an unwinnable issue from a direct appeal, and Petitioner would not have prevailed on direct appeal if the issue had been included in that appeal, Petitioner's third ground for relief lacks merit." *Id.*

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).


Dated this 1st day of May, 2013.

                                                   /s/Jean C. Hamilton

                                               UNITED STATES DISTRICT JUDGE